*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0441p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DAVID E. DAUBENMIRE;  CHARLES S. SPINGOLA;
THOMAS R. MEYER,

*Plaintiffs-Appellants,*

*v.*

No. 06-3461

CITY OF COLUMBUS;  MICHAEL PICCININNI;  TODD S.
BUSH;  JOHN DOES ONE THROUGH FIVE,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-01105—Algenon L. Marbley, District Judge.

Argued:  January 23, 2007

Decided and Filed:  November 6, 2007

Before:  SILER, GIBBONS, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Thomas W. Condit, Cincinnati, Ohio, for Appellants.  Paula Jennings Lloyd,
COLUMBUS CITY ATTORNEY'S OFFICE, Columbus, Ohio, for Appellees.  **ON BRIEF:**
Thomas W. Condit, Cincinnati, Ohio, for Appellants.  Paula Jennings Lloyd, COLUMBUS CITY
ATTORNEY'S OFFICE, Columbus, Ohio, for Appellees.

---

## OPINION

---

SILER, Circuit Judge.  David Daubenmire, Thomas Meyer, and Charles Spingola
(collectively, "Plaintiffs") appeal from the district court's judgment dismissing their 42 U.S.C.
§ 1983 claims.  Meyer and Spingola allege that the City of Columbus ("City"), Sergeant Michael
Piccininni, and Officer Todd Bush[1] (collectively, "Defendants") violated their First, Fourth, and
Fourteenth Amendment rights in connection with their arrests and prosecution for open burning
without a permit on June 23, 2001.  Plaintiffs seek injunctive relief and a declaratory judgment
against the City, stating that they desire to engage in ceremonial burning in the future, that their

---

[1]Plaintiffs conceded that their claims against Officer Bush were untimely filed and they do not appeal the
dismissal of Officer Bush as a defendant.

1

rights under the First and Fourteenth Amendments have been violated, and that the City's policies and practices regarding open burning permits are unconstitutional. They contend that the district court made the following errors: (1) holding that plaintiffs lacked standing to pursue their claims for prospective injunctive and declaratory relief; (2) finding that Meyer and Spingola are collaterally estopped from asserting their claims in connection with their 2001 arrests and prosecutions; and (3) disregarding the liberal pleading standard under Federal Rule of Civil Procedure 12(b)(6) when it concluded that Meyer and Spingola failed to allege a prima facie case of selective enforcement. We **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the district court.

## I. BACKGROUND

On June 23, 2001, Spingola and Meyer attended a "Gay Pride" parade in Columbus, Ohio to protest what they believe to be "the perverse celebration of the Homosexual lifestyle." During the parade, Spingola and Meyer burned a "rainbow flag" and were subsequently arrested by Sergeant Piccininni and Officer Bush. Plaintiffs were charged with open burning without a permit, in violation of Columbus City Code § 2501.985 and Ohio Fire Code ("O.F.C.") F-403, as incorporated into Title 25 of the Columbus City Code.

Spingola and Meyer moved to dismiss the charges against them, claiming that O.F.C. F-403 violates the First Amendment's prohibition on laws abridging freedom of speech. In defense of the City police officer's actions, prosecutors argued that "the City would have issued a permit for open burning . . . had Spingola and Meyer merely applied for one." However, the Franklin County Municipal Court held that O.F.C. F-403, "as applied to flag burning," was an unconstitutional intrusion upon their First Amendment right to free speech. *City of Columbus v. Meyer*, 786 N.E.2d 521, 524 (Ohio Ct. App. 2003). The Ohio Court of Appeals reversed and reinstated the open burning charges. *Id*. at 530. The Ohio Supreme Court denied review.

During the appeal of their state court claims, Spingola and Meyer allege that they heard that Bill Buckel conducted an open burning without a permit and without any interference by City officials. Buckel had applied for an open burning permit in order to burn voter registration forms on a City sidewalk in front of the Ohio Secretary of State's office, but allegedly received a letter from the City's Director of Public Service stating that the City would not issue permits for an open burn in a public right of way. Although Buckel's request was denied, he proceeded with his demonstration. Plaintiffs infer that Buckel was allowed to conduct his open burning without a permit because the City officials were indifferent regarding the content of Buckel's message. In contrast, Plaintiffs assert that they were arrested "because City officials are sympathetic to the Homosexual rights movement and hostile to [Plaintiffs], whose message greatly irritates and offends the Homosexual community."

On remand to the Franklin County Municipal Court, Spingola and Meyer entered pleas of no-contest and were found guilty of open burning without a permit. They claim they had "no incentive to litigate their selective prosecution/equal protection claims" because they faced a possible six-month jail sentence and the trial judge made a pretrial ruling that prevented them from presenting evidence of selective prosecution.

### A. Additional Facts Relevant to Spingola in 2004

In 2004, Spingola once again planned to attend the annual "Gay Pride" parade in Columbus and to burn a "rainbow flag" in protest of the event. He alleges that he had multiple contacts with City and state offices in an effort to obtain an open burn permit for at least three weeks prior to the June 26 parade. As of June 23, 2004, however, Spingola had not received approval from the City. Spingola submitted another application. The City finally issued Spingola an open burn permit less than twenty-four hours before the parade, but only did so after Spingola's attorney contacted the

City Prosecutor's office to inquire why a burn permit had not yet been issued to Spingola and threatened litigation if the City denied the permit application. Spingola alleges that "he still faced intimidation from the City when one of its police officers approached him . . . and threatened [him] with arrest if he did not begin his burn demonstration right at 1:00 p.m." even though his burn application allowed him to wait until 1:30 p.m. However, Spingola was not arrested.

### B.  Additional Facts Relevant to Daubenmire in 2004

Daubenmire is the founder of "Pass the Salt Ministries," a Christian organization "devoted to upholding Christian Values in American Culture." In July 2004, he applied to the City for open burning permits for two ceremonial burnings: (1) the burning of the Koran and the "rainbow flag" at City Hall on July 19, 2004; and (2) the burning of several United States Supreme Court decisions, "viewed by Christians as undermining Biblical morality and giving constitutional protection to sinful behavior," outside of the federal courthouse on July 23, 2004. When Daubenmire received no reply from the City, he assumed that his burn applications had been approved.

Before Daubenmire began his July 19 burning, however, the ceremonial site was "surrounded and monitored by dozens of City police officers, creating an environment of great intimidation for the peaceful assembly of Christians." A City official informed Daubenmire that his permit had been denied and the official threatened to arrest anyone who conducted an open burning. Daubenmire consequently cancelled the demonstration.

On July 20, Daubenmire and one or more other Christian leaders met with City officials to challenge the denial of the burn permit. According to Daubenmire, "At least one City official indicated that a permit had not been issued to [him] because of the content of what was being burned (i.e., the Koran), suggesting that the City did not want to damage its good relations with the Muslim community." The Christian leaders responded by threatening a press conference "to expose to the community the expense incurred by the City for its massive police presence to monitor peaceful Christians" during their demonstration. The City agreed to issue burn permits for July 22 and 23, although Daubenmire had to reapply for the permits, which each had a twenty-minute time limit.

On July 22, the ceremonial burning took place "without incident." However, on July 23, before the procession of protestors arrived at the federal courthouse where the Supreme Court cases were to be burned, City officials informed the Christian leaders that the burn permit had expired. Some of the demonstrators returned to City Hall, where one Christian leader burned the Court decisions and was arrested.

### C. Procedural History

In November 2004, Plaintiffs filed the present suit in federal court asserting three causes of action under § 1983: (1) Meyer and Spingola allege that defendants violated their First, Fourth, and Fourteenth Amendment rights in connection with their arrests and prosecution for open burning without a permit on June 23, 2001; (2) Plaintiffs seek injunctive relief against the City so they may engage in future ceremonial burning; and (3) Plaintiffs seek a declaratory judgment against the City, claiming that their First and Fourteenth Amendments rights have been violated and that the City's policies and practices regarding open burning permits are unconstitutional.

Defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The district court granted Defendants' motions, holding that Meyer and Spingola were collaterally estopped from asserting their first cause of action and, furthermore, that they failed to allege a prima facie case of selective enforcement. *Daubenmire v. City of Columbus*, 452 F. Supp. 2d 794, 804-10 (S.D. Ohio 2006). The court dismissed Plaintiffs' second cause of action, concluding that they lacked standing to sue for injunctive relief. *Id.* at 811-12. Finally, the court concluded that it would not exercise its

discretionary jurisdiction under 28 U.S.C. § 2201 to determine whether the City violated Plaintiffs' First and Fourteenth Amendment rights. *Id.* at 812.

## II. STANDARD OF REVIEW

We review *de novo* an order dismissing a complaint under Rule 12(b)(6) for failure to state a claim for relief. *Lewis v. ABC Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). We must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Legal conclusions or unwarranted factual inferences, however, need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## III. ANALYSIS

Plaintiffs make three arguments on appeal. First, they assert that the district court erred by holding that they lacked standing to pursue their claims for injunctive relief. Next, they dispute the district court's finding that Meyer and Spingola are collaterally estopped from asserting their claims in connection with their 2001 arrests and prosecutions. Finally, they contend that the district court erred when it concluded that Meyer and Spingola failed to state a prima facie case of selective enforcement. We address each claim in turn.

### A. Standing

Plaintiffs argue that they have standing to raise "as applied" challenges to the manner in which the government is granting, withholding, denying, and revoking permits for ceremonial burnings. To satisfy Article III's standing requirements, a plaintiff must show:

> (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004). In a suit for injunctive relief, as here, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). The party seeking to invoke federal jurisdiction bears the burden to demonstrate standing and he "must plead its components with specificity." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999)(citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, (1982)).

Plaintiffs allege that they have each "suffered actual injury as the result of the City's standardless permit scheme." Specifically, "Spingola sustained 'injury-in-fact' by his 2001 arrest and prosecution, his extensive, time-wasting hassle to obtain a permit in 2004, and the threats of intimidation from City police even after he had obtained the 2004 permit." Daubenmire asserts that he too "experienced the same excessive hassle from City government while applying for permits," and describes the permit process as "an unmitigated fiasco, with permits at first withheld, and then alternatively denied, issued, modified, and revoked for various events in spite of [his] attempt to comply." Meyer and Spingola claim that the injury of their 2001 arrests was "exacerbated" when they discovered that Buckel conducted an open burning without City interference and without a permit and that Buckel had been told that the City does not issue burn permits for public sidewalks.

The district court held that Plaintiffs lack standing to seek injunctive relief because they have alleged no injury in fact. *Daubenmire*, 452 F. Supp. 2d at 811-12. The court reasoned that

"[b]ecause Plaintiffs cannot allege specific injuries-in-fact, their arguments are nothing but efforts to salvage a federal claim out of what is no more than a mere possibility that, at some unknown time in the future, Plaintiffs will apply for and be unconstitutionally denied open burning permits." *Id.* at 811. We disagree with this analysis. We find that, at least during the initial part of the case while the court ruled on the motion to dismiss, Plaintiffs' allegations of consistently burdensome and differential past treatment during the permit application process, combined with the fact that Plaintiffs repeatedly engage in and plan to conduct future ceremonial burnings that require them to go through this process, are sufficient to demonstrate a significant possibility of future harm. Consequently, while Plaintiffs may not ultimately prevail on the merits, they have alleged a concrete injury in fact sufficient to support standing to sue.

## B. Collateral Estoppel

Plaintiffs next argue that the district court erred by finding that Meyer and Spingola are precluded from asserting damage claims relative to their 2001 arrests. In determining whether collateral estoppel bars the federal litigation of Plaintiff's free speech, freedom from unreasonable arrests, and equal protection and selective prosecution claims, we apply Ohio law. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (noting that "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered").

In Ohio, collateral estoppel applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994). However, a prior state court action will not preclude litigation in federal court when the litigant against whom the preclusive effect is sought did not have a full and fair opportunity to litigate the claims or issues decided by the state courts. *Allen v. McCurry*, 449 U.S. 90, 104 (1980); *see also Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988).

After Meyer and Spingola's motion to dismiss the charges on the grounds that O.F.C. F-403 violates the First Amendment was denied, they entered no-contest pleas and were found guilty of open burning without a permit. Relying on *Walker v. Schaeffer*, the district court concluded that their § 1983 claims under the First, Fourth, and Fourteenth Amendments were based on the same conduct for which they were found guilty by the state court, and they were, therefore, precluded from asserting their § 1983 claims in federal court. Plaintiffs argue that the district court should have instead applied the decision in *Haring v. Prosise*, 462 U.S. 306 (1983). Rather than distinguishing their case from *Walker*, they ask this court "to revisit and overrule *Walker* to the extent that it conflicts with *Haring*."

We decline to do so, however, since the facts in *Haring* are quite different from those in this case. In *Haring*, the Supreme Court held that, under Virginia collateral estoppel rules, a federal court is not required to give preclusive effect to a conviction based on a guilty plea in a subsequent § 1983 suit seeking to recover damages for an alleged Fourth Amendment violation. 462 U.S. at 323. The doctrine of collateral estoppel did not apply in that case for at least three reasons: (1) the legality of the search conducted in the plaintiff's apartment was never litigated in the criminal proceedings, (2) the criminal proceedings were not necessary to establish the § 1983 claims, and (3) none of the § 1983 issues were "necessarily" determined in the criminal proceedings. *Id.* at 316.

In contrast, Meyer and Spingola bring the same First Amendment claim that the state court heard and denied. Unlike in *Haring*, where the state court had not previously considered the Fourth Amendment issue, Meyer and Spingola have litigated their First Amendment claims. The mere fact that they disagree with the state court's ruling does not grant them access to the federal forum.

Plaintiffs may not use federal court as a "venue for re-litigating issues that were decided in a prior state criminal case." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).

With respect to their Fourth Amendment claim, Plaintiffs are estopped by their pleas in state court from now challenging the reasonableness of their arrest in the instant § 1983 action. *See Walker*, 854 F.2d at 142 ("We hold that the [no-contest] pleas in state court made by defendants and the finding of guilt and imposition of fines by that court estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause.").

### C. Selective Enforcement

To state a claim of selective prosecution, a plaintiff must allege the following:

> First, [the state actor] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the *group* which the defendant belongs to.

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). To prove the first element, Plaintiffs must show that similarly situated persons outside their category were not prosecuted. *Id.* "Furthermore, there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; 'the standard is a demanding one.'" *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)).

Here, Plaintiffs profess that City officials did not prosecute Buckel, who also conducted an open burning without a permit, because the City officials were apathetic about the content of his message. However, Plaintiffs do not allege that the City even knew of Buckel's ceremonial burning. A claim of selective prosecution can survive dismissal "only when the motion alleges sufficient *facts* to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *United States v. Hazel*, 696 F.2d 473, 475 (6th Cir. 1983). Plaintiffs' conclusory allegation does not surpass the "frivolous state." Thus, they fail to allege a prima facie case of selective prosecution.

### IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of Plaintiffs' second cause of action for injunctive relief and **AFFIRM** the district court in all other respects. This matter is **REMANDED** to the district court for further proceedings consistent with this decision.