**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0388n.06

**No. 09-4178**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| 5455 CLARKINS DRIVE, INC., et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| TERRY POOLE, et al., | ) | District of Ohio |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before:      BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

PER CURIAM.  5455 Clarkins Drive, Inc., GoGo Girls Cabaret, Inc., Triple-G Investments, Inc., and Sebastian Rucci appeal from an order of the district court denying in part their motion for injunctive relief and dismissing with prejudice one count of a declaratory judgment action against the appellees.  In relevant part, the appellants sought to have portions of Austintown Township's zoning ordinance governing the nature and size of signs permitted to sexually oriented businesses declared unconstitutional.  Because we agree with the district court that the appellants' constitutional arguments are foreclosed by Ohio's law on res judicata, we affirm.

No. 09-4178
5455 Clarkins Drive v. Poole

**I**

On July 31, 2007, Austintown Township issued a Certificate of Occupancy permitting the appellants to operate a so-called "adult cabaret" at 5455 Clarkins Drive.[1] The appellants named this cabaret "The GoGo."[2] As an adult cabaret, The GoGo is subject to the provisions of Article XIX of the Austintown Township Zoning Ordinance, which regulates sexually oriented businesses. Among those provisions are limitations on the nature and size of the signs that sexually oriented businesses may utilize (the "Adult Sign Code").

After issuance of the Certificate of Occupancy, but prior to The GoGo's opening for business, appellants installed an aluminum sign on the building with the words "Nite Club," "The GoGo," and "Cabaret," and hired an artist to paint a woman's face on one side of a satellite dish located on the premises. In response, the Township filed two separate criminal complaints against the appellants in Mahoning County Court, one alleging that the painted satellite dish violated the Adult Sign Code and the other alleging that the aluminum sign violated the Adult Sign Code. Following a trial held on August 20, 2008, a judge found violations in both cases, holding that (1) the aluminum sign, at larger than 40 square feet, violated the size restrictions on signs subject to the Adult Sign Code, and (2) the painted satellite dish constituted a "sign," and thus was in violation of the Adult Sign Code

---

[1]Under the Township's zoning regulations, an "adult cabaret" is "a nightclub, bar, restaurant, or similar commercial establishment that regularly features: (1) persons who appear in a 'state of nudity' or 'seminude'; or (2) live entertainment characterized by the depiction or description of specified anatomical areas or specified sexual activities; or (3) live entertainment of an erotic nature including exotic dancers, stripers [sic], male or female impersonators, or similar entertainment." No party in this case disputes that The GoGo falls within this definition.

[2]The GoGo and its owners were also referred to as "the Cabaret" by the state courts.

because it was not wall-mounted to the building. In an order dated September 2, 2008, the judge ordered that the satellite dish be painted to conform to the zoning regulations (the aluminum sign having already been removed by the appellants). The appellants appealed to the Ohio Court of Appeals.

During the pendency of their appeal from their criminal convictions for violations of the Adult Sign Code, the appellants installed searchlights on The GoGo's roof, put signs on a truck advertising the business, and parked the truck in The GoGo's parking lot. A "direction sign," indicating the entrance to the parking lot, had been installed earlier. On December 14, 2008, the Township issued citations charging that these measures violated the Adult Sign Code. The appellants appealed the citations to the Township's Board of Zoning Appeals ("BZA"), which ruled against them on March 20, 2009; the appellants then filed an administrative appeal with the state court of common pleas. The appellants, however, subsequently voluntarily dismissed both the appeal from their criminal convictions and the appeal from the BZA's decision on their citations. No substantive action had been taken in either appeal.

In January through April 2009, meanwhile, the Township conducted an undercover drug investigation that eventually resulted in the successful purchase of illegal narcotics from GoGo employees on the premises of the business. The GoGo was also cited for several violations relating to underage drinking and after-hours consumption of alcohol. As a result of this investigation, the Township successfully applied to the Court of Common Pleas for an order closing The GoGo as a "public nuisance." Under the terms of the closure order, which was issued on May 27, 2009, The

GoGo was to remain closed for one year, but could apply for release from the order in 90 days. The order required that an application for release be accompanied by a

> specific plan of implementation so as to assure the abatement of the nuisance at 5455 Clarkins Drive, Austintown, OH. Such a plan shall include identifying specific measures that the Cabaret will immediately implement in order to abate any continued nuisance . . . . Additionally, such plans shall include cooperation and communication between the owner(s) of the Cabaret and officials of Austintown Township with respect to . . . aesthetics of the premises . . . .

The appellants successfully obtained release from the closure order on July 28, 2009. On that date, the judge wrote that he was "satisfied that the Cabaret has implemented specific measures in order to abate any continued nuisance." In addition to measures designed to "monitor the entertainers, employees and patrons," the judge indicated, "[t]he Cabaret has also address[ed] the Township's concerns about aesthetics . . . ." Accordingly, the judge permitted The GoGo to reopen as of July 30, 2009.[3]

On August 6, 2009, the appellants filed a complaint in the United States District Court for the Northern District of Ohio. Count 1 of the complaint sought injunctive and declaratory relief for passage and enforcement of the Adult Sign Code, alleging that the Township's conduct constituted an impermissible restriction on speech under the First Amendment. Accompanying the complaint was a Motion for Temporary Restraining Order requesting that the Township be enjoined from enforcing the Adult Sign Code against The GoGo.

---

[3]The Township originally obtained an *ex parte* order under which it closed The GoGo on May 1, 2009. Judge D'Apolito's order of July 28, 2009, credited The GoGo with closure from May 1, and was thus in keeping with his requirement that The GoGo wait 90 days before it could apply for release from the closure order.

- 4 -

In a memorandum and order dated August 17, 2009, the district court, after noting that the Township had responded to the appellants' TRO motion, converted the motion to one for a preliminary injunction and denied it. The district court based its decision on its belief that the appellants had not demonstrated a substantial likelihood that they would prevail on the merits of their claims. As the district court stated:

> The GoGo's constitutional claims are barred by the doctrine of res judicata. "It has long been the law of Ohio that an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in the first lawsuit." The GoGo raised its constitutional claims, appealed the adverse decisions, and nonetheless decided to abandon the appeals in state court voluntarily. The earlier unfavorable decisions, therefore, became final and binding upon the parties. They cannot now be raised a second time in federal court.

This timely appeal followed. On appeal, the appellants argue that the district court's analysis was in error as a matter of Ohio law, and that the criminal trial, the proceedings before the BZA, and the appeals therefrom do not preclude the appellants from bringing their First Amendment claims in a declaratory judgment action in federal court.

**II**

A

This court ordinarily reviews a district court's decision regarding a preliminary injunction for an abuse of discretion. *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000) (overruled on other grounds, *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)). Four factors must be considered and balanced by the district court in making its determination: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the

injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Ibid.* "The district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). In a First Amendment case, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because, as in this case, the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Nightclubs, Inc.*, 202 F.3d at 888 (citations omitted).

Where, as here, the likelihood of success on the merits is primarily a legal question and involves little or no factual dispute, the issue before us is limited to the purely legal question of whether the district court "improperly applied governing law or used an erroneous legal standard," and we accordingly review the district court's decision de novo. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007); *see also Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (under the abuse of discretion standard in the context of a preliminary injunction, "we must review the district court's legal conclusions de novo and its factual findings for clear error").

B

The district court below denied the appellants' request for a preliminary injunction restraining the Township from enforcing its Adult Sign Code on the sole grounds that their constitutional claims were unlikely to succeed on the merits because those claims were barred by res judicata. Thus the question before us is relatively straightforward; if the district court correctly assessed the preclusive effects of the criminal case in the Mahoning County court and the proceedings before the Board of

Zoning Appeals (and the appeals therefrom), then the district court did not abuse its discretion and we should affirm. If the district court did not correctly assess those effects, then it "improperly applied governing law" and we should reverse and remand so that the district court may consider whether the appellants are likely to succeed on the merits of their underlying First Amendment arguments.

When the prior court proceeding being asserted as res judicata is a state proceeding, we are required to give it the same effect that it would have in that state's courts. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980). As such, the preclusive effect of the previous state court judgments in this case is governed by Ohio law. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 744 (6th Cir. 2002).

In Ohio, the doctrine of res judicata encompasses the two related concepts of claim preclusion and issue preclusion. *State ex rel. Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 592 (Ohio 2010). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action," whereas issue preclusion, or collateral estoppel, "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Ibid.* In Ohio, the doctrine of claim preclusion "applies not only to what was determined but also to every question which might properly have been litigated." *Stromberg v. Bd. of Educ. of Bratenahl*, 413 N.E.2d 1184, 1186 (Ohio 1980). This applies both to claims that could have been raised by the plaintiff *and* those that could have been raised by the defendant at the earlier proceeding. *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 431 N.E.2d 672, 674–75 (Ohio 1982).

## III

The appellants appear to concede that, at the very least, the constitutional arguments they now seek to advance could have been made during their criminal trial. However, appellants argue that, as a matter of Ohio law, preclusion is inapplicable to the judgment in that case because matters resolved in criminal proceedings cannot be used as res judicata in a subsequent civil proceeding. In support of this proposition, they proffer our decision in *Knott v. Sullivan*, 418 F.3d 561 (6th Cir. 2005), in which we observed that a district court had characterized the "general rule" in Ohio as being "that a judgment in a criminal proceeding cannot operate as res judicata, or collateral estoppel, in a civil action to establish any fact determined in the criminal proceeding." *Id.* at 568. We further noted in that case—in which the preclusion issue was waived through the appellant's failure to raise it on appeal—that "Ohio state courts generally frown upon the use of criminal proceedings to estop parties in subsequent civil proceedings." *Ibid.* (quoting *Boone v. Spurgess*, 385 F.3d 923, 927 n.4 (6th Cir. 2004)).

Yet regardless of any frowning that Ohio courts may engage in with respect to the use of *factual* determinations made in an earlier criminal proceeding, res judicata clearly operates in at least some circumstances to prevent a criminal defendant from raising in a subsequent criminal proceeding a *defense* that could have been made in his criminal trial. The Ohio Supreme Court has explicitly held that "a convicted defendant is precluded under the doctrine of res judicata from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on appeal from that judgment." *State v. Szefcyk*,

671 N.E.2d 233, 235 (Ohio 1996). This is because "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Ibid.* (citations and internal quotation marks omitted). The *Szefcyk* court further emphasized that *res judicata* is not an exotic concept, observing that the "doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Ibid.* (internal citations and quotation marks omitted).

Ohio courts have specifically read *Szefcyk* to support the preclusive effects of a criminal proceeding in subsequent civil suits. In *Blackwell v. Gorman*, 870 N.E.2d 1238 (Ohio Ct. C.P. 2007), a court held that a civil plaintiff suing his criminal attorney for malpractice was estopped from asserting his "actual innocence" due to the preclusive effect of the earlier criminal judgment. The court emphasized *Szefcyk*'s language indicating that res judicata stemming from a criminal conviction applies "*in any proceeding*" thereafter, other than an appeal from that judgment. *Id.* at 1250 (emphasis in *Blackwell*).

In *Independence Excavating, Inc. v. City of Twinsburg*, No. 20942, 2002 WL 2009464 (Ohio Ct. App. Sept. 4, 2002), moreover, an Ohio appeals court held that res judicata prohibited an excavating company from arguing in a declaratory judgment proceeding that a city ordinance was unconstitutional when the company's privy had been the subject of an earlier criminal complaint for violation of that ordinance, even when the ordinance's constitutionality was *not* challenged in the criminal proceedings. In *Independence Excavating*, the court acknowledged that "the Ohio Supreme

Court [has] stated that 'the qualitative differences between civil and criminal proceedings . . . militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." *Id.* at *8 (quoting *Walden v. State*, 547 N.E.2d 962 (Ohio 1989)). However, the court went on to explore the basis for that idea, noting that the *Walden* court was particularly interested in whether the burdens of proof, discovery rules, evidentiary rules, procedure, or constitutional safeguards effective at the criminal stage could have affected that party's willingness or ability to pursue the argument at issue in a way that no longer obtained at the civil stage. *Accord State ex rel. Ferguson v. Court of Claims*, 98 Ohio St.3d 399 (Ohio 2003) (considering "qualitative differences between the previous criminal proceedings and [a] civil reparations action that prohibit the application of res judicata"). Finding that the constitutional argument made in the civil case involved the same burdens of proof and would not be affected by differences in discovery methods, privilege, or self-incrimination safeguards, the *Independence Excavating* court concluded that, *a fortiori*, the willingness and ability of the appellant in that case to pursue a constitutional argument had not been significantly different in the earlier criminal proceeding, and thus there was no qualitative difference to prevent the application of res judicata.

The appellants respond to *Independence Excavating* by arguing that, in that case, res judicata was appropriate because the burden was "on the individual" in both the criminal trial and the civil case. The appellants further contend that, in this case, their declaratory judgment challenge is one in which the government would bear the burden of proof as to the law's constitutionality vis-a-vis the First Amendment, whereas in their criminal case the issue of constitutionality would have been raised as an affirmative defense, which would have placed the burden of proving a First Amendment

violation onto the appellants themselves. Thus, they reason, the logic of *Independence Excavating*, which they allege depends on the fact that "the party seeking to establish the property's nonconforming use would bear the burden of showing the ordinance's unconstitutionality" in both proceedings, does not apply.

However, our decision in *Daubenmire v. City of Columbus*, 507 F.3d 383 (6th Cir. 2007) speaks to the contrary. In *Daubenmire*, two protestors were arrested and prosecuted for publicly burning a rainbow-colored "gay pride" flag in violation of a city ordinance prohibiting open burning without a permit. The protestors moved to dismiss the charges against them, claiming that the ordinance violated the First Amendment's prohibition on laws abridging freedom of speech. The municipal court granted the motion, but the Ohio Court of Appeals reversed and reinstated the charges, and the Ohio Supreme Court denied review. On remand, the defendants entered pleas of no contest and were found guilty. After their convictions, the protestors filed suit in federal court alleging, among other things, a cause of action under 42 U.S.C. § 1983 that the City had violated their First Amendment rights by arresting and prosecuting them. A district court granted the City's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), holding that the protestors were prevented by res judicata from asserting the First Amendment cause of action.

We affirmed. After noting that "a prior state court action will not preclude litigation in federal court when the litigant against whom the preclusive effect is sought did not have a full and fair opportunity to litigate the claim or issues decided by the state courts," *Daubenmire*, 507 F.3d at 389, we held that the protestors were "bring[ing] the same First Amendment claim that the state court heard and denied. . . . [They] have litigated their First Amendment claims. The mere fact that

they disagree with the state court's ruling does not grant them access to the federal forum. Plaintiffs may not use federal court as a 'venue for re-litigating issues that were decided in a prior state criminal case.'" *Id.* at 390 (quoting *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005)). Thus we viewed the protestors as having been precluded from contesting the constitutionality of the ordinance under the First Amendment *regardless* of any burden-shifting that might have occurred during the criminal trial. Keeping in mind that Ohio law applies res judicata to all questions that might properly have been litigated in an earlier proceeding, the fact that the *Daubenmire* appellants actually raised their constitutional defense in their earlier criminal trial, rather than choosing to forego it like the appellants here, is immaterial.

Though the appellants gamely point to several decisions of Ohio courts in which the existence of a prior criminal proceeding was not held preclusive, in each of these cases some flaw actually prevented the party against whom res judicata was asserted from fully or fairly litigating their claims, whether it was a lack of opportunities for appeal, a difference in opposing parties, a lack of participation in the original litigation, or the absence of the issue in the original litigation. No such defect is present in this case, particularly given the appellants' decision to dismiss their appeals before advancing any First Amendment arguments.[4] During their criminal proceedings, the

---

[4]The appellants claim to have been effectively forced to withdraw their appeals in order to apply for release from the court order closing The GoGo as a public nuisance, an argument undercut by the fact that the administrative appeal was withdrawn six days *before* the judge issued his final order on the merits of the Township's public nuisance complaint (and, while the record is unclear on this point, counsel for the appellant appeared to indicate at oral argument that the appeal from the criminal convictions was withdrawn at the same time). In any event, there is no evidence in the record that either the Township or the court demanded, or even suggested, that either of the appeals be withdrawn; at most, appellants appear to have taken this action as an unsolicited gesture of good

appellants indisputably could have raised their First Amendment claims, and appear to have had precisely the same opportunity and motivation to pursue them; their willingness and ability to do so were unaffected by the fact that the earlier proceeding happened to be a criminal trial.[5]  Moreover, they have made no argument that, as a practical matter, the differences between criminal and civil procedural or evidentiary rules denied them that opportunity to pursue their claims of facial invalidity.  Like the protestors in *Daubenmire*, the appellants merely seek to use federal court as a venue for re-litigating issues that they had a full and fair opportunity to have decided in a prior criminal case.  Thus, like the *Daubenmire* court, we must conclude that the appellants' First Amendment claims are barred in the federal district court by Ohio's law on res judicata.

## IV

Because we find the res judicata effect of the appellants' previous criminal trial to preclude them from bringing their First Amendment challenge to the Adult Sign Code, we do not reach the question of whether res judicata also applies to their appeal from the decision of the BZA.  The judgment of the district court is **AFFIRMED**.

---

faith.  If they are dissatisfied with the results, we do not sit to revisit their decision.

[5]It is not clear that the appellants' defense of facial unconstitutionality would have been considered an "affirmative defense" under Ohio law, a proposition the appellants assert without citation.  Ohio Revised Code § 2901.05(D)(1) defines an affirmative defense as either "a defense expressly designated as affirmative" or "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence."  We can find no indication that the appellants' First Amendment argument would have been expressly designated as an affirmative defense by the Ohio Revised Code, nor does such an argument depend upon matters peculiarly within the appellants' knowledge, particularly inasmuch as those grounds attack the constitutionality of the Adult Sign Code on its face.

- 13 -